NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

DELILAH MAE HULL, et al.
*Petitioner/Appellee/Cross-Appellant*,

*v.*

LA SHAWN WILLIAMS,
*Respondent/Appellant/Cross-Appellee*.

No. 1 CA-CV 25-0605 FC

FILED 03-03-2026

Appeal from the Superior Court in Maricopa County
No. FC2023-001200
The Honorable Laura J. Giaquinto, Judge *Pro Tempore*
The Honorable Jacki Ireland, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

LaShawn Williams, Phoenix
*Respondent/Appellant/Cross-Appellee*

Delilah Hull, Litchfield Park
*Petitioner/Appellee/Cross-Appellant*

Arizona Attorney General's Office, Tucson
By Jennifer R. Blum
*Counsel for Appellee Department of Economic Security*

---

**MEMORANDUM DECISION**

Judge Andrew J. Becke delivered the decision of the Court, in which Presiding Judge Samuel A. Thumma and Judge Kent E. Cattani joined.

---

**B E C K E**, Judge:

¶1        LaShawn Williams ("Father") appeals the denial of his "Motion to Vacate Orders for Lack of Jurisdiction and Constitutional Violations" and "Request for De Novo Review Immediately" regarding the superior court's order granting his petition to modify child support. Delilah Mae Hull ("Mother") cross-appeals from the underlying modification judgment and child support order. For the following reasons, we affirm.

**FACTUAL AND PROCEDURAL HISTORY**

¶2        Father and Mother have one child in common, born in December 2022. The Arizona Department of Economic Security ("ADES") filed a petition for paternity and to establish child support in February 2023. In June 2023, the superior court entered temporary legal decision-making, parenting time, and child support orders. In calculating child support, the court attributed a monthly income of $7,000 to Father and $3,262 to Mother and ordered Father to pay Mother $178 per month in child support.

¶3        In January 2024, Father and Mother executed a settlement agreement under Arizona Rule of Family Law Procedure ("Rule") 69. The court signed the Rule 69 agreement, which was filed in the record. But the court never issued an order adopting the agreement or a decree incorporating the agreement. The agreement provided that the temporary child support orders would remain in place and that Father owed Mother $5,500 in support arrears, with Father paying Mother an additional $250 per month until the arrears were paid in full. The superior court ordered the parties to submit a consent decree for its signature.

¶4        The parties began drafting documents to effectuate the Rule 69 agreement, addressing paternity, legal decision-making, parenting time, and child support. In June 2024, Mother filed the parties' signed parenting plan agreement. Father's counsel then withdrew. Mother submitted a proposed order for paternity, legal decision-making, parenting time, and

child support, asserting it mirrored the terms of the original Rule 69 agreement.

¶5        Father objected to the proposed order, arguing it did not include edits he had requested. Mother countered that the order should be approved because Father did not "indicate that the [order] contain[ed] any errors or that it [did] not comport with the terms of the parties' binding Rule 69 Agreement." Mother contended that Father simply did not like the terms of the agreement anymore.

¶6        Before the court ruled on the requested order, Father filed three notices and an affidavit, all claiming he was not a citizen subject to any jurisdiction. Despite these claims, Father then filed a "Request to Reappear for Child Support," a motion to continue on the dismissal calendar, and a "Motion to Vacate Child Support Order." Although the superior court granted the motion to continue, it denied his other two motions because there was no underlying petition to modify child support, and there was not a change in circumstances to warrant review.

¶7        In March 2025, Father filed a petition to modify the temporary orders, arguing his change in income constituted a "substantial and continuing change in circumstances" warranting a modification of his child support per A.R.S. § 25-503(E). About a month later, Father also filed a "Special Appearance to Challenge Jurisdiction, Constitutional Objection to Child Support Enforcement, and Insertion of My Constitution Rights," arguing lack of personal and subject-matter jurisdiction. Father argued that, because he did not consent to the "jurisdiction of the Title IV-D agency," any child support actions against him should be dismissed. Both parties filed affidavits of financial information.

¶8        The superior court held a child support modification hearing where both Mother and Father testified, and counsel for ADES advised the court of its position and recommendations. Based on the testimony and the court file, the court found "a continuing and substantial change in the circumstances of the parties warranting modification of the child support amount" and granted Father's petition to modify. In recalculating child support, the court attributed a monthly income of $6,675 to Father and $4,746 to Mother. The court reduced Father's child support payment to $104 per month and his arrears payment to $150 per month. The court also confirmed Father was in arrears for about $4,000. In May 2025, the court entered a final modification judgment and child support order reflecting these changes.

**¶9** Father filed a "Motion to Vacate Orders for Lack of Jurisdiction and Constitutional Violations" and a "Request for De Novo Review Immediately." In his two motions, Father argued the superior court violated his due process rights by not proving its jurisdiction over him and for allowing ADES to provide a recommendation as to child support. Father also argued the "ruling was issued without findings of fact or conclusions of law." The superior court summarily denied both motions in unsigned minute entries.

**¶10** Father filed a notice of appeal of the denial of those motions, but we stayed the appeal for Father to obtain a Rule 78(c) judgment. After entry of that Rule 78(c) judgment, we lifted the stay, and Mother then filed a timely cross-appeal. We have jurisdiction under Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1) and -2101(A)(2).

## DISCUSSION

**¶11** Father makes four arguments on appeal, all concerning jurisdiction and due process. Mother makes two arguments on cross-appeal targeting the final child support order.

## I. The Superior Court Had Subject-Matter and Personal Jurisdiction.

**¶12** Father first argues a court commissioner can only perform "ministerial or preliminary functions unless both parties consent," and because the denial of his two motions was issued by a commissioner without consent, the orders are "constitutionally invalid" and a violation of the separation of powers doctrine and the Supremacy Clause. *See* Ariz. Const. art. 3; U.S. Const. art. VI, cl. 2. Father also claims the court lacked subject-matter jurisdiction because the "Title IV-D administrative enforcement proceedings were [never] properly converted into a judicial action" and lacked personal jurisdiction because he "made only a special appearance to challenge jurisdiction and did not consent to general jurisdiction." Subject matter jurisdiction and personal jurisdiction are questions of law we review *de novo. In re Marriage of Crawford*, 180 Ariz. 324, 326 (App. 1994); *Duckstein v. Wolf*, 230 Ariz. 227, 234, ¶ 19 (App. 2012).

**¶13** Contrary to Father's argument, court commissioners are authorized to preside over child-support cases and enforce child-support orders by both the Arizona Constitution and statute. Ariz. Const. art. 6, § 24; A.R.S. § 12-298(A), (C); Ariz. R. Sup. Ct. 96(a)(2). Therefore, the commissioner had authority to rule on Father's motions concerning the final modification judgment and order. Father's assertion that "Title IV-D administrative enforcement proceedings" must be "converted into a

judicial action under A.R.S. § 25-502" is similarly unpersuasive. The superior court has original jurisdiction in proceedings establishing paternity and in proceedings brought by ADES to "establish, enforce or modify the duties of [child] support." A.R.S. §§ 25-801; -502(A). The statutes do not require any kind of "conversion."

**¶14** Father fails to make any cognizable argument to suggest a court commissioner cannot resolve a motion for modification of child support consistent with separation of powers and Supremacy Clause requirements. A court commissioner is a member of the judicial branch and has constitutional and statutory authority to rule on motions like those at issue here, and this authority does not conflict with separation of powers concepts or federal law. *See* Ariz. Const. art. 6, § 24; A.R.S. § 12-298(A), (C).

**¶15** Finally, because Father made a general appearance by taking "action[s], other than objecting to personal jurisdiction," he has waived any contest to personal jurisdiction. *See Kline v. Kline*, 221 Ariz. 564, 569, ¶ 18 (App. 2009); *State ex rel. Dep't of Econ. Sec. v. Burton*, 205 Ariz. 27, 29, ¶8 (App. 2003). Father fails to show the superior court lacked subject-matter or personal jurisdiction.

## II.   Father Was Not Denied Due Process.

**¶16** Father next argues he was denied due process because the superior court denied his two motions without a hearing and without factual findings or citation of legal authority. Father also argues his due process rights were violated when he requested review by "an elected judge under A.R.S. § 12-213 . . . but the matter remained before a commissioner." Father lastly argues because Mother was not properly served with his petition to modify child support, any proceeding under the petition was procedurally defective. Due process issues are questions of law we review *de novo. Backstrand v. Backstrand*, 250 Ariz. 339, 346, ¶ 28 (App. 2020).

**¶17** Father's claims fail because Rule 35(c) allows the superior court to "decide motions without oral argument, even if requested." A hearing is not required unless a "material contested issue hinges on credibility," *Volk v. Brame*, 235 Ariz. 462, 466, ¶ 14 (App. 2014), or the parties "are directly in opposition upon any substantial and crucial fact relevant to the [issue]," *Pridgeon v. Superior Court*, 134 Ariz. 177, 181 (1982). Here, Father's two motions to modify judgment do not fit either scenario.

**¶18** Moreover, Father testified in court at the child support modification hearing, when both his motion to modify child support and his first motion challenging jurisdiction were pending. The court decided both motions "based on the discussion held on the record." Father had an opportunity to be heard on his jurisdictional concerns and the underlying child support modification at the modification hearing. And because Father has not provided a transcript of the proceeding, we presume the missing transcript supports the court's decision. *Myrick v. Maloney*, 235 Ariz. 491, 495, ¶ 11 (App. 2014); ARCAP 11(c)(1)(B).

**¶19** Father fails to provide any real legal support for his claim that only an "elected judge" can review the constitutional and jurisdictional issues in his motions. As stated *supra* ¶ 13, court commissioners have both the constitutional and statutory authority to rule on child support modifications. Father cites A.R.S. §§ 12-213, -298, 1-601, "Rule 81(E)," and a 1999 Minnesota Supreme Court case to support his assertion. As an initial matter, Rule 81 of the Arizona Rules of Family Law Procedure does not contain a subsection (E).

**¶20** As for the statutes, A.R.S. § 12-213 sets forth the procedure for appointing court commissioners and setting their salaries. It also prohibits commissioners from making ex parte orders that deprive "any person . . . from custody of their child or children, or change of counsel of attorneys, or deprive any person of the person's liberty, or deprive any person or entity from the person's or entity's property or the use thereof, or any injunctive relief." The court commissioner in this case did not make any such ex parte order. And A.R.S. § 12-298 *mandates* the appointment of court commissioners in certain counties to oversee the establishment and enforcement of child support orders and spells out the specific procedures of certain rulings. A.R.S. § 1-601 protects a parent's right to raise their child and prevents the state from infringing on those rights. None of these statutes say or do what Father claims—prohibit court commissioners from ruling on his petition to modify child support.

**¶21** And Father's 1999 Minnesota Supreme Court case, *Holmberg v. Holmberg*, 588 N.W.2d 720 (Minn. 1999), is inapposite. In that case, the court struck down Minnesota's administrative child support process because it granted administrative law judges, who worked for an executive agency, complete power over child support cases in violation of the separation of powers doctrine. *Holmberg*, 588 N.W.2d at 725–26. That ruling has no relevance in addressing Arizona's child support process, where cases are decided by members of the Arizona judicial branch.

¶22            Finally, Father claims the proceedings were defective because Mother was never properly served his petition to modify child support, but Mother waived any objection she may have had and Father lacks standing to raise arguments on her behalf. *See Goglia v. Bodnar*, 156 Ariz. 12, 18 (App. 1987) ("When an error applies to only one party . . . another party cannot make that argument on its own behalf.").

¶23            Father fails to show any due process violation.

### III.    Father Has Waived His Arrears Argument.

¶24            Father next argues he was coerced into stipulating to a certain arrears amount in the Rule 69 agreement, and asks us to declare the Rule 69 agreement void and vacate any judgment enforcing it. But Father has waived those arguments because he did not raise them in his petition to modify child support or in his two post-modification motions. *See Cullum v. Cullum*, 215 Ariz. 352, 355, ¶14 n. 5 (App. 2007).

¶25            Furthermore, the validity of the Rule 69 agreement is not before us on appeal. Father appealed his two post-modification motions and the final modification judgment and order[1]—neither of which concern the Rule 69 agreement. The superior court did not mention the Rule 69 agreement in its minute entry from the modification hearing or in its final modification judgment and order, and there is no judgment enforcing the Rule 69 agreement in the record. Father failed to provide a transcript of the modification hearing, so we rely on the minute entry and order for the court's reasoning and presume the transcript supports the court's findings and conclusion. *Myrick*, 235 Ariz. at 495, ¶ 11; ARCAP 11(c)(1)(B).

### IV.    ADES and Mother Were Not Required to Respond to Father's Two Post-Modification Judgment Motions.

¶26            Father next argues because Mother and ADES did not respond to his two post-modification motions, their silence constitutes default, and the superior court was required to grant his unopposed

---

[1] Father's notice of appeal does not challenge the ruling granting his petition to modify child support or the final modification judgment and order. However, we liberally construe a notice of appeal if the appellee is neither misled nor prejudiced by the result. *Hanen v. Willis*, 102 Ariz. 6, 8–9 (1967). And here, Mother has not been prejudiced as she herself addresses the court's final modification judgment and child support order in her answering brief and cross-appeal.

motions. We review the denial of a Rule 85 motion[2] to vacate the judgment for an abuse of discretion. *Quijada v. Quijada*, 246 Ariz. 217, 220, ¶ 7 (App. 2019).

**¶27** Under Rule 35(b)(2), a "court *may* summarily grant or deny a motion" if no response is filed and the time to file a response has passed. (Emphasis added). The superior court retains discretion and there is no requirement to summarily grant an unopposed motion. *See Schwab v. Ames Constr.*, 207 Ariz. 56, 59, ¶ 14 (App. 2004) ("If the party opposing a motion fails to respond in writing, the trial court may, in its discretion, dispose of the motion summarily."). Father fails to show the superior court abused its discretion in denying his two post-modification judgment motions.

## V. The Superior Court Did Not Abuse Its Discretion When It Granted Father's Motion to Modify Child Support.

**¶28** In her cross-appeal, Mother argues the superior court attributed the wrong monthly income to Father and failed to credit her with a $200 monthly family health insurance coverage premium. We review modifications of child support for an abuse of discretion. *Strait v. Strait*, 223 Ariz. 500, 502, ¶ 6 (App. 2010).

**¶29** Mother claims Father's April 2025 financial affidavit shows a year-to-date income of $39,000, meaning the superior court should have attributed to him a monthly income of $9,750. Although Father's financial affidavit listed his year-to-date income of $35,829.71 and a monthly income of $3,147, Mother failed to provide a transcript of the modification hearing. Therefore, we presume the transcript supports the court's factual findings and rulings. *Myrick*, 235 Ariz. at 495, ¶ 11; ARCAP 11(c)(1)(B). Mother also fails to provide any citations to the record showing the existence of a $200 monthly health insurance premium. Thus, Mother fails to show the superior court abused its discretion in granting Father's motion to modify child support.

---

[2] Father failed to identify the correct procedural rules under which he filed his two post-modification motions. We treat each as a Rule 85 motion to vacate the judgment, as each asks the court to vacate the judgment for lack of jurisdiction and denial of due process. *See* Rule 85(b)(4), (6).

**CONCLUSION**

**¶30** We affirm the superior court's denial of Father's "Motion to Vacate Orders for Lack of Jurisdiction and Constitutional Violations" and "Request for De Novo Review," and we affirm the court's order granting Father's motion to modify child support and the resulting modification judgment and order. Mother requests "reimbursement and sanctions" under A.R.S. § 12-349 and ARCAP 25. In the exercise of our discretion, we deny her request for sanctions under § 12-349 and ARCAP 25. Because we affirm as to both the appeal and the cross-appeal, we deny taxable costs to both parties.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**: JR